No. 26-10106

# In the United States Court of Appeals For the Fifth Circuit

ALBERT G. HILL, III, INDIVIDUALLY, AND AS A BENEFICIARY OF THE MARGARET HUNT TRUST ESTATE, DERIVATIVELY ON BEHALF OF THE MARGARET HUNT TRUST ESTATE, INDIVIDUALLY, AS A BENEFICIARY OF THE HAROLDSON LAFAYETTE HUNT JR. TRUST ESTATE, AND DERIVATIVELY ON BEHALF OF THE HAROLDSON,
*Plaintiff,*

v.

CAROL E. IRWIN; MARGARET KELIHER, INDIVIDUALLY AND IN HER CAPACITY AS TRUSTEE OF THE MHTE AND A MEMBER OF THE ADVISORY BOARD OF THE HHTE,
*Defendants – Appellants,*

v.

CAROLINE M. HILL,
*Interested Party – Appellee*

On Appeal from the United States District Court
For the Northern District of Texas; Civil Action No. 3:07-CV-02020
Honorable Sam A. Lindsey, District Judge, presiding

## BRIEF OF APPELLANTS

Michael J. Lang
mlang@cwl.law
Alexandra Ohlinger
aohlinger@cwl.law
Crawford Wishnew & Lang PLLC
1700 Pacific Ave. Suite 2390
Dallas, Texas 75201
(214) 817-4500

*Counsel for Carol E. Irwin (as Independent Executor of the Estate of Ivan Irwin, Jr., Deceased, and Former Co-Trustee of the Lyda Hill—Margaret Trust f/b/o Albert G. Hill, Jr.)*

W. Scott Hastings
*scott.hastings@troutman.com*
TROUTMAN PEPPER LOCKE LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
(214) 740-8000

G. Michael Gruber
*mike.gruber@gtlaw.com*
Brian E. Mason
*Brian.mason@gtlaw.com*
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3600

*Counsel for Margaret Keliher, Independent Executor of the Estate of Albert G. Hill, Jr.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

1. Appellants are:

   Carol E. Irwin Independent Executor of the Estate of Ivan Irwin, Jr., Deceased, and Former Co-Trustee of the Lyda Hill—Margaret Trust f/b/o Albert G. Hill, Jr. and

   Margaret Keliher, Independent Executor of the Estate of Albert G. Hill, Jr.

2. Appellant Margaret Keliher is represented by W. Scott Hastings of Troutman Pepper Locke LLP (Dallas, Texas), and G. Michael Gruber and Brian E. Mason of Greenberg Traurig, LLP (Dallas, Texas)

3. Appellant Carol E. Irwin is represented by Michael J. Lang and Alexandra Ohlinger of Crawford Wishnew & Lang PLLC (Dallas, Texas)

4. Appellee is Caroline M. Hill ("Caroline"), daughter of Al Hill, III ("Al III")

5. Appellee is represented by William A. Brewer, III, Joshua H. Harris, Jordan B.V. Smith, and Amir I. Saada of Brewer, Attorneys and Counselors (Dallas, Texas)

6. Joyce E. Waller (Former Co-Trustee of the Lyda Hill—Margaret Trust f/b/o Albert G. Hill, Jr.) is a defendant in the probate court lawsuit filed by Caroline M. Hill

7. Joyce E. Waller is represented by Michael J. Lang and Alexandra Ohlinger of Crawford Wishnew & Lang PLLC (Dallas, Texas)

8. Galatyn Finance, LLC is a defendant in the probate court lawsuit filed by Caroline M. Hill

9. Galatyn Finance, LLC is represented by Tom M. Dees, III of Hallett & Perrin, P.C. (Dallas, Texas)

10. Joyce E. Waller and Galatyn Finance, LLC agree with and support Appellants in this appeal.

*/s/W. Scott Hastings*
W. Scott Hastings

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument. This case has an extended history dating back to 2007. There have been numerous appeals taken to this Court since the district court entered a final judgment in 2010. This is the first appeal Appellants have taken requesting relief from this Court.

There have been multiple recusals by federal district court judges in this case, resulting in different federal district judges handling different portions of the case. Thus, the district judge who entered the final judgment in 2010 is not the same district judge who purported to narrow the scope of the final judgment (thereby purporting to change the parties' 2010 settlement agreement and the district court's continuing jurisdiction to enforce the final judgment based on the agreement) years later. Oral argument may assist the Court in analyzing the complexities of this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........ ii

STATEMENT REGARDING ORAL ARGUMENT ........ iv

TABLE OF CONTENTS ........ v

INDEX OF AUTHORITIES ........ viii

GLOSSARY OF TERMS ........ xii

INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 5

STATEMENT OF THE ISSUES ........ 6

STATEMENT OF FACTS ........ 6

A. The Settlement Agreement and Final Judgment Prevent Caroline's Lawsuit ........ 7

1. The Final Judgment Bars Contingent Beneficiaries from Engaging in Litigation Regarding Any MHH Trust, Including the LHMTA. ........ 7

2. Caroline Was Only a Contingent Beneficiary of the LHMTA Before Its Termination. ........ 9

3. Caroline Sued in 2025 Demanding an Accounting of the LHMTA and Asserting Breach of Fiduciary Duty Claims, in Plain Violation of the Final Judgment. ........ 10

B. The District Court Denied Appellants' Request to Enforce the Final Judgment. ........ 11

1. The District Court Improperly Concluded That Its Enforcement Jurisdiction Was Limited to Disputes Over Only the MHTE and HHTE Based on a July 2018 Order. ........ 12

2. The July 2018 Order Was Interlocutory, Entered Without Prejudice, and Not Subject to Appeal Until Now. ........ 14

C. The Final Judgment Was Not Limited to the MHTE and HHTE. ........ 16

1. The Settlement Agreement and Final Judgment Resolved Disputes Relating to Many MHH Trusts. ........16

2. The Gallo Trust Dispute Illustration. ........18

D. The District Court and this Court Have Repeatedly Explained that the Settlement Agreement and Final Judgment Must Be Enforced As Written and Agreed to by the Parties. ........20

E. The District Court Enforced the Final Judgment in 2017 and 2018 Without Limiting Enforcement to the MHTE and HHTE. ........22

F. The District Court Failed to Enforce the Final Judgment's Waiver of Standing Clause Against Caroline. ........25

SUMMARY OF THE ARGUMENT ........26

ARGUMENT ........28

A. Standard of Review ........28

B. The District Court Erred by Failing to Exercise Subject Matter Jurisdiction to Enforce the Final Judgment. ........30

1. The District Court Has Ancillary Jurisdiction to Enforce the Final Judgment. ........30

2. The District Court Erred by Purporting to Narrow Its Ancillary Enforcement Jurisdiction Years After this Court Affirmed the Final Judgment. ........32

3. Appellants Did Not Waive or Forfeit Their Right to Contest the District Court's Erroneous Interpretation of the Final Judgment. ......36

a. The District Court's July 2018 Order Did Not Narrow the Scope of Jurisdiction to Enforce the Final Judgment's Waiver of Standing Clause. ........37

b. Appellants Could Not Appeal the July 2018 Order Until Now. ........40

4. Enforcing the Final Judgment to Prevent Caroline from Challenging the LHMTA Does Not Lead to Absurd Results. ........43

C. The Anti-Injunction Act Does Not Preclude Enforcing the Final Judgment. ....44

1. The Anti-Injunction Act Does Not Apply to the Waiver of Standing Clause. ....44

2. Action From the District Court Is Necessary to Protect or Effectuate the Federal Court Judgment. ....45

3. Action Is Also Appropriate in Aid of Federal Court Jurisdiction. ....48

D. This Court Should Enforce the Waiver of Standing Clause, or, Alternatively, Expedite Proceedings on Remand. ....50

CONCLUSION ....52

CERTIFICATE OF SERVICE ....54

CERTIFICATE OF COMPLIANCE ....54

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*In re AKD Inv.*,
79 F.4th 487 (5th Cir. 2023) .....28

*Ali v. Quarterman*,
607 F.3d 1046 (5th Cir. 2010) .....41

*Anglo-Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.*,
352 S.W.3d 445 (Tex. 2011) .....29

*Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*,
976 F.3d 585 (5th Cir. 2020) .....15

*Battle v. Liberty Nat'l. Life Ins. Co.*,
877 F.2d 877 (11th Cir. 1989) .....49

*Butt v. United Bhd. of Carpenters & Joiners of Am.*,
999 F.3d 882 (3d Cir. 2021) .....30

*Campbell Harrison & Dagley, L.L.P. v. Hill ("Hill III")*,
582 F.App'x 522 (5th Cir. 2014) .....2

*Cardoni v. Prosperity Bank*,
805 F.3d 573 (5th Cir. 2015) .....42

*Chick Kam Choo v. Exxon Corp.*,
486 U.S. 140 (1988) .....46

*City of El Paso, Tex. v. El Paso Entm't, Inc.*,
382 F.App'x 361 (5th Cir. 2010) .....28, 31

*City of El Paso v. El Paso Entm't, Inc.*.
464 F.App'x 366 (5th Cir. 2012) .....29

*City of Fort Lauderdale v. Freeman*,
197 F.2d 122 (5th Cir. 1952) .....41

*Combs v. Health Care Servs. Corp.*,
401 S.W.3d 623 (Tex. 2013) .....43

*Conwill v. Greenberg Traurig, L.L.P.*,
448 F.App'x 434 (5th Cir. 2011) ........................................ 41

*Cooper Indus., Ltd. v. Nat'l Union Fire Ins.*,
876 F.3d 119 (5th Cir. 2017) ........................................ 40

*In re Corrugated Container Antitrust Litig.*,
659 F.2d 1332 (5th Cir. 1981) ........................................ 48

*Daniels Health Sciences, L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013) ........................................ 51

*Dombrowski v. Pfister*,
380 U.S. 479 (1965) ........................................ 44

*Finley Res., Inc. v. Headington Royalty, Inc.*,
672 S.W.3d 332 (Tex. 2023) ........................................ 29, 43

*Flanagan v. Arnaiz*,
143 F.3d 540 (9th Cir. 1998) ........................................ 49

*In re Fort Worth Chamber of Commerce*,
100 F.4th 528 (5th Cir. 2024) ........................................ 51

*Geller v. Branic Intern. Realty Corp.*,
212 F.3d 734 (2d Cir. 2000) ........................................ 31

*General Land Office v. Biden*,
71 F.4th 264 (5th Cir. 2023) ........................................ 52

*Glass v. Paxton*,
900 F.3d 233 (5th Cir. 2018) ........................................ 50

*Hill v. Schilling, ("Hill I")*,
495 F.App'x 480 (5th Cir. 2012) ........................................ *passim*

*Hill v. Schilling ("Hill II")*,
578 F.App'x 456 (5th Cir. 2014) ........................................ 2, 5, 29

*Hill v. Schilling ("Hill IV")*,
593 F.App'x 330 (5th Cir. 2014) ........................................ 2, 5, 20, 21

*Hill v. Washburne ("Hill V"),*
953 F.3d 296 (5th Cir. 2020) ........................................................... *passim*

*IFC Interconsult, AG v. Safeguard Intern. Partners, LLC.*,
438 F.3d 298 (3d Cir. 2006) ............................................................ 31

*In re Johns-Manville Corp.*,
517 F.3d 52 (2d Cir. 2008) .............................................................. 35

*Kokkonen v. Guardian Life Ins. Co.*,
511 U.S. 375 (1994) ....................................................................... 30

*Nat'l City Golf Fin. v. Scott*,
899 F.3d 412 (5th Cir. 2018) ........................................................... 30

*Nat'l City Mortg. Co. v. Stephen*,
647 F.3d 78 (3d Cir. 2011) .............................................................. 30

*In re Nat'l Gypsum Co.*,
219 F.3d 478 (5th Cir. 2000) ........................................................... 28

*New York Life Ins. Co. v. Gillispie*,
203 F.3d 384 (5th Cir. 2000) ........................................................... 47

*Peacock v. Thomas*,
516 U.S. 349 (1996) ....................................................................... 30

*Pulsifer v. United States*,
601 U.S. 124 (2024) ....................................................................... 33

*Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*,
960 F.2d 1286 (5th Cir. 1992) ......................................................... 31

*Sanchez v. Maher*,
560 F.2d 1105 (2d Cir. 1977) .......................................................... 31

*Shriner's Hosp. Children's of Tex. v. Stahl*,
610 S.W.2d 147 (Tex. 1980) ........................................................... 10

*Singleton v. Wulff*,
428 U.S. 106 (1976) ....................................................................... 50

*Stass v. Am. Commercial Lines, Inc.*,
683 F.2d 120 (5th Cir. 1982) ....................................................................51

*Travelers Indem. Co. v. Bailey*,
557 U.S. 137 (2009)........................................................................5, 34, 35, 44

*United States v. Am. Soc'y of Composers*,
442 F.2d 601 (2d Cir. 1971) .......................................................................49

*United States v. Erie County*,
763 F.3d 235 (2d Cir. 2014) .......................................................................31

*United States v. Olano*,
507 U.S. 725 (1993)...............................................................................36, 40

*URI, Inc. v. Kleberg County*,
543 S.W.3d 755 (Tex. 2018) .....................................................................29

*Wayman v. Southard*,
23 U.S. (10 Wheat.) 1 (1825) .....................................................................30

*Woods Exploration & Producing Co. v. Aluminum Co. of Am.*,
438F.2d 1286, 1311-1316 (5th Cir. 1971).....................................................48

*Yates v. Pinellas Hematology & Oncology, P.A.*,
21 F.4th 1288 (11th Cir. 2021) ....................................................................41

**Statutes and Rules**

28 U.S.C. §1292(a)(1).................................................................................5, 41

28 U.S.C. §1331 ..............................................................................................5

28 U.S.C. §1367 ..............................................................................................5

28 U.S.C. §2283 ...........................................................................44, 45, 46, 48

5th Cir. L. R. 27.5 ..........................................................................................51

TEX. PROP. CODE §112.059 .............................................................................9

**Treatises and Commentary**

BLACK'S LAW DICTIONARY ...........................................................................41

## GLOSSARY OF TERMS

| Term | Definition |
|---|---|
| Al Jr. | Albert G. Hill, Jr. (deceased) |
| Al III | Albert G. Hill, III |
| Caroline | Appellee Caroline M. Hill |
| Continuing Jurisdiction Clause | Doc.879, §III(5)(c); Doc.999, ¶45 |
| Final Judgment | The November 2010 Final Judgment (Doc.999) |
| Gallo Trust | The Margaret Hunt Hill—Al G. Hill, III Trust |
| Grandchildren's Trusts | Trusts established in the Settlement Agreement for the benefit of Al III's children / who were Al Jr.'s grandchildren |
| HHTE | Haroldson L. Hunt, Jr. Trust Estate |
| July 2018 Order | Memorandum and Opinion dated July 3, 2018 (ROA.21142; RE Tab 4) |
| Lawsuit | Case No. PR-25-02919-2, *Caroline M. Hill v. Margaret Keliher et al.*, in the Dallas County Probate Court No. 2 (*see* RE Tab 5) |
| LHMTA | Lyda Hunt—Margaret Trusts, Albert G. Hill, Jr. |
| Manville | Johns-Manville Corporation |
| MHH | Margaret Hunt Hill |
| MHH Trust | "a trust for the primary benefit of a descendant of Margaret Hunt Hill" (Doc.999, ¶28) |
| MHTE | Margaret Hunt Trust Estate |
| Settlement Agreement | The Global Settlement and Mutual Release Agreement filed May 14, 2010 (Doc.879) |
| Waiver of Standing Clause | Doc.879, §III(5)(b); Doc.999, ¶28 |

## INTRODUCTION

This is an appeal from the district court's order (ROA.25847; RE Tab 3) erroneously finding it lacked jurisdiction to enforce a final judgment entered in 2010 (the "***Final Judgment***") (Doc.999).[1] Judge O'Connor entered the Final Judgment approving and incorporating a heavily-negotiated Global Settlement and Mutual Release Agreement (the "***Settlement Agreement***") (Doc.879) to end wide-ranging litigation brought by Albert G. Hill, III ("***Al III***") over trusts established for the benefit of Margaret Hunt Hill's ("***MHH***") heirs. That settlement provided over $100 million in consideration to Al III[2] and $30 million to fund trusts for his children (including Appellee Caroline Hill ("***Caroline***")) in exchange for numerous agreements, including a waiver of standing clause and a continuing jurisdiction clause as key, material, bargained-for terms.

The Final Judgment also included a "no contest" clause, under which Al III and his immediate family were ordered "not to contest the Last Will and Testament of [Albert G. Hill, Jr. ("***Al Jr.***")] or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property." Doc.999, ¶29.

[1] Appellants cite the sealed record by district court document number, followed by the applicable page or paragraph. For example, Doc.999, ¶28 means Paragraph 28 of the document filed at ECF999. Doc.999, p.1 means Page 1 of ECF999.

[2] *See* Doc.1767, p.7 & n.3 (detailing value of Al III's trust).

The ***Waiver of Standing Clause*** in the Settlement Agreement and Final Judgment prohibits individuals who were not "current beneficiaries" from demanding information, seeking an accounting, or asserting causes of action in the future concerning *any* "MHH Trust" based upon anything occurring before they became a current beneficiary. Doc.879, §III(5)(b); Doc.999, ¶28. An "***MHH Trust***" is defined as any trust "for the primary benefit of a descendant of Margaret Hunt Hill." Doc.879, §III(5)(b); Doc.999, ¶28. Two MHH Trusts were the Margaret Hunt Trust Estate (the "***MHTE***") and the Haroldson L. Hunt, Jr. Trust Estate (the "***HHTE***"), but the Waiver of Standing Clause applied to *all* MHH Trusts, whether or not expressly modified or referenced in the Settlement Agreement and Final Judgment.

The district court expressly retained jurisdiction over the Settlement Agreement and Final Judgment to implement and enforce their terms, including the future looking Waiver of Standing Clause. Doc.879, §III(5)(c); Doc.999, ¶45 (the "***Continuing Jurisdiction Clause***"). This Court affirmed the 2010 Final Judgment years ago. *See Hill v. Schilling*, 495 F.App'x 480, 485 (5th Cir. 2012) ("***Hill I***"). Thereafter, Judge O'Connor recused himself in May 2013. ROA.1764; *see Hill v. Schilling*, 593 F.App'x 330, 332 (5th Cir. 2014) ("***Hill IV***").[3] Eventually, the case

[3] "***Hill II***" is *Hill v. Schilling*, 578 F.App'x 456 (5th Cir. 2014). "***Hill III***" is *Campbell Harrison & Dagley, L.L.P. v. Hill*, 582 F.App'x 522 (5th Cir. 2014), which this Court dismissed because Al III waived his right to appeal.

was assigned to Judge Lindsay, ROA.21232, n.3, who has exercised his authority to enforce the Final Judgment on several occasions, namely to enjoin Al III from breaching the parties' Settlement Agreement and Final Judgment. *See, e.g.,* Doc.1867 (entering permanent injunction to stop Al III raiding his children's trusts); *Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020) ("***Hill V***") (affirming injunction compelling Al III not to contest Al Jr.'s will).

Despite the consideration she already received in the settlement, on September 5, 2025, Caroline filed suit in Dallas County Probate Court No. 2 (the "***Lawsuit***"), in which she admitted: (1) the Lyda Hunt—Margaret Trusts, Albert G. Hill, Jr. ("***LHMTA***")—the trust at issue here—was established in 1954 for the primary benefit of Al Jr.; (2) Al Jr. was a descendant of MHH; (3) the LHMTA co-trustees terminated the trust in December 2016; (4) Caroline was never a current beneficiary of the LHMTA prior to its dissolution; but (5) Caroline seeks an accounting and to assert claims for purported actions and inactions in 2016—when she was not a current beneficiary. ROA.25746, 25750-25752, 25754-25756. Thus, Caroline conceded the facts confirming (a) the LHMTA was an MHH Trust covered by the Settlement Agreement and Final Judgment's Waiver of Standing Clause, (b) she breached (and is breaching) the Settlement Agreement, and (c) she violated (and is violating) the Final Judgment's Waiver of Standing Clause by seeking relief relating to the LHMTA for time periods when she admits she was not a current beneficiary.

By seeking such prohibited relief in the Lawsuit, Caroline is denying Appellants the benefit of their bargain under the Settlement Agreement and Final Judgment, which are intended to bring peace and an end to litigation (past, present, and future) over Al Jr.'s property, estate, and trusts, *and* the MHH Trusts.

Appellants asked the district court to enforce its Final Judgment by preventing Caroline from violating the Waiver of Standing Clause. However, the district court refused, erroneously claiming (a) it lacked subject matter jurisdiction and (b) it would be absurd to enforce the Final Judgment (and, thus, the unambiguous terms of the negotiated Settlement Agreement) as written. In fact, the district court claimed it changed the Continuing Jurisdiction Clause by narrowing it. After this Court affirmed the Final Judgment entered by Judge O'Connor, Judge Lindsay lacked the authority to fundamentally change its scope and materially alter the terms of the parties' underlying settlement contract. The Final Judgment should be enforced as written using ancillary enforcement jurisdiction to compel compliance with it. Doc.879, §III(5)(c); Doc.999, ¶45; *see Hill V*, 953 F.3d at 308-10 (affirming injunction).

Although there have been multiple appeals from this case, this is the first time Appellants or anyone affiliated with Al Jr.'s Estate have taken an appeal with respect to the Final Judgment. While Appellants wholeheartedly agree with the district court that Hunt/Hill family litigation must end, the only way to achieve peace and end the

litigation is to swiftly and decisively enforce the Final Judgment, including the Waiver of Standing Clause, as written. After all, the purpose of the Settlement Agreement and Final Judgment was to end the then-current litigation *and* prevent future lawsuits involving MHH Trusts, such as Caroline's prohibited Lawsuit.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§1331 & 1367 to enter Final Judgment based on the parties' Settlement Agreement. This Court affirmed that judgment on direct appeal. *Hill I*, 495 F.App'x at 486. Thereafter, the Final Judgment is not subject to collateral attack. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009). Post-settlement, this Court has twice affirmed the denial of attempts by Appellee's father to modify or seek relief from the Final Judgment. *See Hill II*, 578 F.App'x at 460 ("declin[ing] to modify the final judgment"); *Hill IV*, 593 F.App'x at 333-34 (affirming denial of Al III's Rule 60(b) motion). Now, it is the district court that is trying to modify the Final Judgment.

The district court has ancillary jurisdiction to enforce its Final Judgment, Doc.879, §III¶5(c); Doc.999, ¶45, which the district court has previously exercised and this Court affirmed. *Hill V,* 953 F.3d at 307-10 (affirming grant of forward-looking permanent injunctive relief). This Court has appellate jurisdiction under 28 U.S.C. §1292(a)(1) from the denial of injunctive relief.

The district court entered its order subject to this appeal on January 30, 2026. ROA.25847. Appellants timely appealed on February 4, 2026. ROA.25873.

## STATEMENT OF THE ISSUES

1. Did the district court err when it held it lacked enforcement jurisdiction under the Final Judgment to stop Caroline from pursuing state court claims relating to an MHH Trust?

2. Did Appellants waive or forfeit their right to contest the scope of the district court's jurisdiction?

3. Did the district court err when it found that Appellants' request for injunctive relief is barred by the Anti-Injunction Act?

4. Should this Court enforce the Final Judgment's Waiver of Standing Clause and Continuing Jurisdiction Clause, or, alternatively, direct the district court to expedite this enforcement proceeding?

## STATEMENT OF FACTS

This case has had a long history since being removed to federal court in 2007. ROA.237. In November 2010, the district court entered the Final Judgment (Doc.999) incorporating the parties' Settlement Agreement (Doc.879) following years of litigation in federal court and many state courts over numerous MHH Trusts.

## A. THE SETTLEMENT AGREEMENT AND FINAL JUDGMENT PREVENT CAROLINE'S LAWSUIT.

### *1. The Final Judgment Bars Contingent Beneficiaries from Engaging in Litigation Regarding Any MHH Trust, Including the LHMTA.*

The Settlement Agreement and Final Judgment defined the "***Agreeing Parties***" bound to the Final Judgment, specifically including Caroline. Doc.999, ¶1, 2(f). Caroline was represented by her parents as "next friends, and on behalf of their children" in the Settlement Agreement and by legal counsel, the "Court appointed guardian ad litem: Michael K. Hurst," in the Final Judgment. Doc.999, ¶¶2(f) & (v); Doc.879, p.2-3. Through the heavily-negotiated, bargained-for settlement, Caroline's family received a nine-figure settlement, *Hill V*, 953 F.3d at 301, including new trusts for Caroline's direct benefit. Doc.999, ¶¶7(f)(ii), 7(i), 19-22.

The Final Judgment imposed many orders to end existing (and prevent new) litigation over MHH Trusts, including the Waiver of Standing Clause:

> 28. IT IS ORDERED that, pursuant to the Agreement, the Court finds that during such time as an Agreeing Party is not a current beneficiary of a trust for the primary benefit of a descendant of Margaret Hunt Hill ("MHH") (an "MHH Trust") and any other descendant of MHH is living, such Agreeing Party has waived: (1) his or her status as an interested person in such trust, and (2) all rights that he or she may have as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, including but not limited to the right to demand information, seek an accounting, or assert any claim or cause of action in connection with any such trust. . . .

Doc.999, ¶28. Even after an Agreeing Party becomes a current MHH Trust beneficiary, this clause "continue[s] to apply to any actions taken or omitted by any other person or entity during the period that such person was not a current beneficiary." Doc.999, ¶28. That is, current beneficiaries cannot question actions that occurred before they became a current beneficiary. Stated differently, the purpose of the Waiver of Standing Clause was to avoid future disputes and litigation relating to MHH Trusts.[4] In exchange for a nine-figure payment, Al III and Caroline, agreed to the Waiver of Standing Clause in the Settlement Agreement, which the district court then approved and incorporated into its Final Judgment.

Notably, no specific trust is named in the broad Waiver of Standing Clause.[5] The parties to the Settlement Agreement could have limited its scope by specifically naming individual trusts (such as the MHTE and/or HHTE), but they intentionally agreed to keep the language broad to apply to any MHH Trust. As a matter of basic contract interpretation, the Waiver of Standing Clause must apply to more than just the MHTE and HHTE. This appeal involves an MHH Trust known as the LHMTA.

---

[4] The Final Judgment's Waiver of Standing Clause is substantially similar to Paragraph 5(b) of the Settlement Agreement, other than to convert the parties' agreement into a court order. *Compare* Doc.999, ¶28. *with* Doc.879, ¶5(b).

[5] Given the size of H.L. Hunt's estate, there are several MHH Trusts subject to this provision, some of which are listed in the Settlement Agreement and Final Judgment. Not all of the MHH Trusts are listed.

Caroline has never disputed that the LHMTA is an MHH Trust as defined in the Settlement Agreement and Final Judgment.

Although this dispute focuses on a trust established for the benefit of Al Jr., the Waiver of Standing Clause applies to all MHH Trusts, including those established for Caroline's benefit. Thus, an MHH Trust established for Caroline's benefit is not subject to suits, accountings, etc., requested by other family members unless they are also current beneficiaries of such a trust. Doc.999, ¶28. The Waiver of Standing Clause applies even-handedly to all parties to the Settlement Agreement and Final Judgment, including Caroline.

### ***2. Caroline Was Only a Contingent Beneficiary of the LHMTA Before Its Termination.***

The LHMTA was formed in Lyda Bunker Hunt's 1954 will. It was originally for MHH's benefit, but after her death, the LHMTA was partitioned into separate trusts each for the primary benefit of MHH's three children. As the trust's name implies, the LHMTA (the Lyda Hunt—Margaret Trusts, Albert G. Hill, Jr.) was for the primary benefit of Al Jr. during his lifetime; he was the only current beneficiary. ROA.25746, 25750. Caroline was only a "contingent beneficiary." ROA.25746, 25751. In December 2016 (before Al Jr.'s December 2, 2017, death), the LHMTA was terminated under Tex. Prop. Code §112.059. ROA.25754. Caroline never became a current beneficiary of the LHMTA because it was terminated before Al Jr. died. ROA.25746, 25754.

### 3. *Caroline Sued in 2025 Demanding an Accounting of the LHMTA and Asserting Breach of Fiduciary Duty Claims, in Plain Violation of the Final Judgment.*

In the Lawsuit, Caroline alleges she became a current beneficiary of the LHMTA "when Al Jr. died on December 2, 2017," as a result of testamentary powers of appointment in Al Jr.'s will. ROA.25751-25752. Of course, a will's provisions do not take effect until death of the testator, *see* Tex. Estates Code §101.001, meaning the termination of the LHMTA prior to Al Jr.'s death extinguished the ability of any potential power of appointment in Al Jr.'s will to take effect. *See Shriner's Hosp. Children's of Tex. v. Stahl*, 610 S.W.2d 147, 150 (Tex. 1980) ("A will speaks at the time of the testator's death, and it is the estate he then possessed that passes according to the terms of the will.").

But even if the powers of appointment to an already-terminated trust could be effective (which they are not), under the plain language of the Settlement Agreement and Final Judgment's Waiver of Standing Clause, Caroline could not challenge "any actions taken or omitted by any other person or entity" relating to the LHMTA *before* December 2, 2017 because under no set of circumstances was she a current LHMTA beneficiary *before* Al Jr. died. Doc.999, ¶28. Nevertheless, Caroline sued demanding an accounting, return of funds into the LHMTA, and damages, claiming that "between December 20, 2014, and December 2, 2017, Al Jr.—with the assistance of the Co-Trustees—looted the LHMTA and dissolved it, leaving nothing

for the Grandchildren [including Caroline]." ROA.25752; *see also* ROA.25756 (alleging breach of fiduciary duties). This she cannot do.

The Waiver of Standing Clause's plain language precludes Caroline from "seek[ing] an accounting, or assert[ing] any claim or cause of action in connection with any [MHH] trust" before the date when, if ever, she became a current beneficiary of the MHH Trust at issue. Doc.999, ¶28. There is no legitimate dispute that the LHMTA was an MHH Trust, which was defined as "a trust for the primary benefit of a descendant of Margaret Hunt Hill." Doc.999, ¶28. The LHMTA was formed for the benefit of Al Jr., MHH's son. ROA.25746, 25750.

Moreover, Caroline is asserting claims relating to the LHMTA based on conduct occurring *before* the date when she could have become a "current beneficiary" of the LHMTA, if it had not been terminated. ROA.25752. The Final Judgment unequivocally orders that: "the waivers in this paragraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that such person was not a current beneficiary." Doc.999, ¶28. Thus, the Waiver of Standing Clause bars Caroline from pursuing any claims relating to the LHMTA.

## B. THE DISTRICT COURT DENIED APPELLANTS' REQUEST TO ENFORCE THE FINAL JUDGMENT.

Appellants promptly moved the district court to enforce its Final Judgment to stop Caroline from breaching the Settlement Agreement and violating the Waiver of Standing Clause by suing in state court. *See* Doc.2040; ROA.25704. The district

court did not dispute any of the foregoing facts. ROA.25847-25872. Nevertheless, the district court denied Appellants' motion to enforce, erroneously holding it lacked jurisdiction to grant relief. ROA.25869.

#### ***1. The District Court Improperly Concluded That Its Enforcement Jurisdiction Was Limited to Disputes Over Only the MHTE and HHTE Based on a July 2018 Order.***

The district court recognized it had continuing jurisdiction to enforce the Settlement Agreement and Final Judgment:

> IT IS ORDERED that, without affecting the finality of this Final Judgment, the Court hereby retains continuing jurisdiction over the implementation of the [Settlement] Agreement, the Final Judgment, and the Parties for purposes of implementing and enforcing the [Settlement] Agreement and this Final Judgment. IT IS FURTHER ORDERED that any controversy or claim arising after the date of execution of the [Settlement] Agreement and arising out of the [Settlement] Agreement or the Documentation shall be resolved by this Court.

ROA.25852 (the Continuing Jurisdiction Clause). The district court explained, however, that it had limited its enforcement jurisdiction in an order dated July 3, 2018 (the "***July 2018 Order***"), writing:

> *As a threshold matter, the court notes that the Settlement Agreement and Final Judgment only modified the MHTE and HHTE. … With respect to any Hunt/Hill family trusts other than the MHTE and HHTE, therefore, this court does not have continuing jurisdiction, and issues pertaining to those family trusts are not properly before this court. The court declines to expand its continuing jurisdiction beyond the implementation and enforcement of the Settlement Agreement and Final Judgment.*

ROA.25856-25857 (emphasis by district court). In the order currently on appeal, the district court emphasized that no one appealed the July 2018 Order purporting to limit its jurisdiction. ROA.25857.

The district court further concluded it would be "absurd" to enforce the Final Judgment as written. ROA.25866-25867. But the district court previously (and correctly held in the July 2018 Order) that the "each 'Agreeing Party' … agreed to waive his or her standing and right to demand information, seek accountings, or assert any claim or cause of action in connection with ***any trust*** for the primary benefit of a descendant of Margaret Hunt Hill of which he or she is not a current beneficiary." ROA.21128 (June 2018) (emphasis added); ROA.21145 (July 2018) (emphasis added). The district court cited no authority allowing it to rewrite the Continuing Jurisdiction Clause or the Waiver of Standing Clause from the parties' May 2010 Settlement Agreement or the November 2010 Final Judgment.

Finally, the district court held the Anti-Injunction Act barred it from granting the relief Appellants requested. ROA.25869-25871. The district court's Anti-Injunction Act analysis depended on its conclusion that the July 2018 Order limited its jurisdiction. ROA.25870-25871 ("the court has already explicitly narrowed its continuing jurisdiction in this case to disputes involving the [MHTE] and HHTE, trusts in the [Settlement Agreement] and incorporated into the Final Judgment.").

### 2. *The July 2018 Order Was Interlocutory, Entered Without Prejudice, and Not Subject to Appeal Until Now.*

The July 2018 Order stated in bold in the beginning and the end that the requested relief was "denied without prejudice as premature." ROA.21143, 21161. The July 2018 Order further stated the district court had "continuing jurisdiction" over "enforcement of the Settlement Agreement and Final Judgment." ROA.21154. And, as noted in the prior section, the district court expressly stated that the Waiver of Standing Clause applied with respect to "***any trust*** for the primary benefit of a descendant of Margaret Hunt Hill of which he or she is not a current beneficiary." ROA.21145 (emphasis added). This Court similarly recognized: "[o]n July 3, 2018, the district court denied all relief without prejudice, holding any relief would be 'premature' because of the pending probate proceedings." *Hill V*, 953 F.3d at 302. When resolution of issues relating to Al III's improper will contest were no longer premature, this Court upheld the district court's exercise of continuing jurisdiction to enforce the Final Judgment's "no contest" provision against Al III. *Id.* at 310. Enforcing the Waiver of Standing Clause is no different.

Al III's December 2018 appeal from the injunction entered at the end of 2018 raised no trust-specific questions. It related exclusively to a dispute over whether Al III could contest Al Jr.'s will, which he could not.[6] *See Hill V*, 953 F.3d 296.

---

[6] Al III's notice of appeal confirmed the orders he appealed:

The district court found irreparable harm would occur if Al III was allowed to continue contesting Al Jr.'s will, which would deprive the other parties to the Final Judgment and Settlement Agreement of the benefit of their bargain. ROA.21254-21255. This Court affirmed that irreparable harm finding tied to Al III violating the Final Judgment. *Hill V*, 953 F.3d at 309. The same rationale applies to enforce the Waiver of Standing Clause to prevent Caroline from violating the Final Judgment by pursuing her Lawsuit.

Al III dropped his trust-related proceedings in the probate court in early 2019.[7] As a result, the trust-related issues the district court denied without prejudice as premature did not return to federal court.[8] Until Caroline re-initiated litigation, this time over the LHMTA, no party to the Final Judgment was facing trust litigation violating the Final Judgment.

---

> Notice is hereby given that Plaintiff Albert G. Hill, III ("Al III") appeals to the United States Court of Appeals for the Fifth Circuit from the Court's Memorandum and Order dated December 7, 2018 (Document 1919) and Memorandum Opinion and Order Denying Stay Pending Appeal (Document 1924).

ROA.21310. The July 2018 Order was not listed.

7 A copy of Al III's non-suit of his trust-related claims is on file with this Court as Exhibit 12 to Appellants' Motion for Injunction Pending Appeal filed on February 23, 2026. That non-suit is a public record; this Court may take judicial notice. *See Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020).

8 Prior to being non-suited, Al III's trust-related challenges were severed into a separate lawsuit in probate court. ROA.21235. As a result, when Al III's will contest continued and returned to the federal court, the continuation of those proceedings did not implicate the trust litigation that had been severed into a different lawsuit.

## C. THE FINAL JUDGMENT WAS NOT LIMITED TO THE MHTE AND HHTE.

Because the district court has erroneously suggested that the litigation resolved by the Final Judgment concerned only the MHTE and HHTE (ROA.25856-25857), Appellants provide an extended case history to correct the record.

In short, the parties knew how to write provisions in the Settlement Agreement and their proposed Final Judgment that were specific to a given trust. For example, trusts such as the MHTE, HHTE, the Grandchildren's Trusts, the Bordeaux Trust, or the Gallo Trust are specifically addressed. *See, e.g.,* Doc.879, ¶¶1(b)(i), 1(b)(ii), 1(g), 2(a), 3, 4(e), 4(i), & 5(h). They also knew how to use broader language when they intended for provisions to be broader. For example, the Waiver of Standing Clause uses the broad term "MHH Trust" to reach any trust for the primary benefit of a descendant of Margaret Hunt Hill (MHH). *See, e.g.,* Doc.879, ¶¶1(b)(iii) & 5(b). Importantly, Judge O'Connor approved the Settlement Agreement, and incorporated it into the Final Judgment, expressly including the Waiver of Standing Clause and Continuing Jurisdiction Clause. Doc.999, ¶¶1, 28, 45.

### ***1. The Settlement Agreement and Final Judgment Resolved Disputes Relating to Many MHH Trusts.***

As the guardian ad litem appointed to represent Al Jr.'s grandchildren (including Caroline) reported back in July 2010 (before the Final Judgment was entered), this case began as a dispute under the MHTE, but it "grew exponentially,

resulting in dozens of lawsuits that were pending in thirteen different trial courts (prior to some consolidation) and resulting in claims regarding multiple family businesses and trusts." Doc.899, p.3.

Exhibit B to the Final Judgment lists the many underlying lawsuits that were resolved globally by the Settlement Agreement and Final Judgment. Doc.999, Ex. B. As reflected in the names of those lawsuits, there were many trusts at issue, including, for example, the Bordeaux Trusts and several Hill Family trusts such as the "Hill 1980 Trusts" and the "Hill 1977 Trust." Doc.999, Ex. B.

While the Settlement Agreement and Final Judgment included many provisions specific to the MHTE and HHTE, they also included several provisions specific to other trusts. For example, the Final Judgment required creation of new trusts for the benefit of Al III's children known as the "***Grandchildren's Trusts***," which Al Jr. funded. Doc.999, ¶¶19-24. The Final Judgment required Al III to repay money to the Bordeaux Trusts and Hill Family Trusts for his children's benefit. Doc.999, ¶¶27(c) & (d). The Settlement Agreement modified who could serve as trustees for many trusts for Al III's children's benefit, including for the Bordeaux Trusts, the Hill Family Trusts, the new Grandchildren's Trusts, and the Separate Hill 2010 Trust.[9] Doc.879, ¶4(e). The court-appointed guardian ad litem expressly

[9] On April 22, 2011, Al Jr., Appellants, and others filed a Motion to Enforce the Final Judgment and Settlement Agreement to compel Al III to comply with these terms regarding replacement of trustees. Doc.1134, p.7-8. Al III responded providing his status update on trustee

investigated some trusts to help determine the amount of repayments required from Al III. Doc.895, p.17; Doc.899, p.20-21; Doc.937-2, p.25-26. Accordingly, it was inaccurate for the district court to write that "*the Settlement Agreement and Final Judgment only modified the MHTE and HHTE*." ROA.25856-25857 (emphasis in original).

***2. The Gallo Trust Dispute Illustration.***

The disputes regarding The Margaret Hunt Hill—Al G. Hill, III Trust ("***Gallo Trust***") illustrate that the Settlement Agreement and Final Judgment resolved (and were intended to resolve) MHH Trust disputes beyond just the MHTE and HHTE. The Gallo Trust was one of seven trusts MHH created in 1989 for the benefit of each of her seven grandchildren. Doc.964, p.1-2. It was not the same as the MHTE, which was created in 1935 by MHH's parents, H.L. Hunt and Lyda Hunt. Doc.999-1, Ex. C, ¶1. The Settlement Agreement expressly listed the Gallo Trust litigation among the lawsuits the parties were resolving globally by settlement. Doc.879, Ex. B; *see also* Doc.964, p.2-3 (summarizing the Gallo Trust litigation).

After the parties entered into the Settlement Agreement, they worked for months to finalize the Final Judgment and related documents to complete the settlement. In August 2010, however, the newly-appointed trustee of the Gallo Trust

---

replacement, which was not complete at the time. Doc.1160, 6-7. The district court's June 11, 2011, order indicated the parties were able to resolve the trustee replacement issues after the motion was filed. Doc.1174, p.3.

moved to intervene in this case to object and seek to exclude the Gallo Trust from the global resolution. Doc.940 & Doc.941. The trustee contended that he discovered transactions involving the Gallo Trust that he wanted to investigate further. Doc.941, p.5-6. Al III and his wife similarly requested exclusion of the Gallo Trust (and another one called the "2006 Trust") from the Settlement Agreement. Doc.935, p.4-5; Doc.936, p.17-19; Doc.945, p.8-10. Al Jr. opposed that relief because the settlement was intended to resolve all the MHH Trust disputes, including those concerning the Gallo Trust. Doc.954, 4-6; Doc.964; Doc.965. The guardian ad litem also opposed excluding the Gallo Trust because an exclusion allowing trust-related litigation to continue would disrupt the intent of the settlement. Doc.950, 25-26. Thereafter, the new Gallo trustee withdrew his motion to intervene after his continued investigation satisfied his concerns. ROA.16755.

Ultimately, Judge O'Connor rejected Al III's and his wife's objections relating to excluding the Gallo Trust. Doc.971. When entered, the Final Judgment resolved the issues relating to the Gallo Trust, as intended by the *global* Settlement Agreement. The Final Judgment also modified the Gallo Trust to require a bank with greater than $10 billion in assets to serve as trustee at all times. Doc.999, ¶14.[10]

[10] Paragraph 14 provides, *inter alia*, that "the terms of the … Margaret Hunt Hill—Albert G. Hill III [aka, the Gallo Trust] shall be modified to require a bank with greater than $10 billion in assets under management (adjusted for inflation) to serve as trustee at all times." Doc.999, ¶14.

This example shows that it is not accurate for the district court to suggest the Settlement Agreement and Final Judgment were only intended to address the MHTE and HHTE. Indeed, if the district court's January 2026 erroneous jurisdictional interpretation were followed previously, the Gallo Trust dispute would not have been within the district court's jurisdiction.

### D. THE DISTRICT COURT AND THIS COURT HAVE REPEATEDLY EXPLAINED THAT THE SETTLEMENT AGREEMENT AND FINAL JUDGMENT MUST BE ENFORCED AS WRITTEN AND AGREED TO BY THE PARTIES.

After the Final Judgment was entered, Al III tried unsuccessfully to vacate, modify, or alter it numerous times. *See, e.g., Hill I*, 495 Fed. Appx. at 484-86 (affirming denial of motion to modify); *Hill IV*, 593 Fed. Appx. at 333-35 (affirming denial of Rule 60(b) motion based on Judge O'Connor's *sua sponte* recusal and based on alleged newly-discovered evidence).

At least as early as April 2014, the district court warned everyone to stop trying to change the Settlement Agreement and Final Judgment:

> Plaintiff's motion and litigating posture on his matter causes undue burden on the court's resources and harasses Defendants. This litigation – which came to an end with a November 2010 judgment – has become unduly protracted; however, at some point all litigation must come to an end. Considerable but scarce judicial resources have been expended. The judgment of this case is final, has been affirmed by the Fifth Circuit, and *certiorari* has been denied. … This litigation, and the to-and-fro surrounding it, must end.
>
> **In this vein, if any further motion is filed to reconsider, amend or alter the judgment, or any similar motion seeking to**

> **vacate the November 2010 final judgment, and the court finds such motion is baseless, frivolous, or without merit, the court will impose sanctions against the offending attorney or party.** The parties are strongly warned not to test the court's patience in this regard.

ROA.18524 (emphasis by the district court). The district court also issued "a specific warning to [Al III]" when denying his *third* Rule 60(b) motion seeking to change the Final Judgment. ROA.18530. The district court wrote:

> *"The jig is up," and it is time to wind down this litigation! Plaintiff and his counsel need to heed the words of Willie Nelson's classic country and western song: "Turn out the Lights, the Party's Over."*

ROA.18530 (emphasis by the district court). This Court also reminded Al III of these warnings. *Hill IV*, 593 F.App'x at 335.

Appellants have always heeded the district court's clear warnings. The Settlement Agreement and Final Judgment should be enforced as written—with the goal of ending the family litigation and preventing new litigation over any of the MHH Trusts. Enforcing the Final Judgment is the only way to end the litigation.

In February 2015, the district court once again refused to depart from the Settlement Agreement and Final Judgment's plain language. Doc.1546. After a trustee appointed under Paragraph 14 of the Final Judgment resigned, the trustee (with Al III's support) requested approval of a replacement bank trustee that did not meet the Final Judgment's asset requirements. Doc.1546, p.2. The district court rejected that request stating it "cannot and will not approve" the appointment of a trustee that failed to meet the express requirement of the Final Judgment. Doc.1546,

p.4. The district court declined to modify the Final Judgment to allow for the appointment. Doc.1546, p.5.

In March 2015, the district court rejected another attempt by Al III to appoint a trustee that did not qualify under Paragraph 14 of the Final Judgment. ROA.18637.

Notably, the issues regarding trustee qualifications under Paragraph 14 applied to trusts beyond just the MHTE and HHTE. *See* ROA.18597. The district court addressed many significant issues and motions regarding Al III's appointment and subsequent attempt to remove First Tennessee Bank ("***FTB***") as trustee for the Grandchildren's Trusts in February 2017, as will be addressed in the next section. ROA.20727.

### E. THE DISTRICT COURT ENFORCED THE FINAL JUDGMENT IN 2017 AND 2018 WITHOUT LIMITING ENFORCEMENT TO THE MHTE AND HHTE.

This Court has already seen in connection with *Hill V* that the district court had to enforce the Final Judgment in 2018 to stop Al III from contesting Al Jr.'s will. The district court's December 10, 2018, contempt order against Al III, which was not appealed to this Court, shows that the district court also enforced the Final Judgment in 2017 and 2018 to address Al III's misconduct involving the Grandchildren's Trusts when FTB served as the newly-designated trustee. ROA.21260-21278; *see also* ROA.20755 (July 10, 2017 Order re: FTB); ROA.20758 (requiring accounting) ROA.20870 (show cause order); ROA.20928,

20931 (second show cause order after Al III "elected not to attend" a hearing). The district court did not limit its continuing jurisdiction to enforce the Final Judgment to just the MHTE and HHTE in 2018.

As noted above, Al Jr. agreed to fund new trusts for Al III's children, including Caroline, under the Settlement Agreement and Final Judgment. ROA.21261-21262. Those three irrevocable trusts were established by Al III, but funded by Al Jr. in four annual instalments payments of $7.5 million, for a total payment of $30 million. ROA.21261-21262. After the trusts were established and related gift taxes were paid, Al Jr.'s installment payments were released from the court's registry to fund the Grandchildren's Trusts. ROA.21262-21263. The trust instruments, which were attached as exhibits to the Final Judgment, specified the limited purposes for which the trusts could be used before the grandchildren reached the age of 25. ROA.21263.

When Al Jr. learned his son (Al III) was raiding the Grandchildren's Trusts to support his and his wife's "lavish lifestyle," even though the trusts were formed for his grandchildren (Al III's own children, including Caroline), Al Jr. sought emergency injunctive relief against Al III and his wife because they violated the terms and conditions under which Al Jr. funded the Grandchildren's Trusts. ROA.21263. The district court granted Al Jr.'s request for emergency injunctive relief, including requiring Al III to account for $9 million that had been taken from

the Grandchildren's Trusts. ROA.21263. The district court subsequently ordered Al III to cease trying to access the funds in the Grandchildren's Trusts and to stop trying to replace FTB as trustee. ROA.21264-21266. On May 23, 2018, the district court granted Al Jr.'s request for a permanent injunction against Al III to protect Caroline's and her brothers' Grandchildren's Trusts. Doc.1867; ROA.21266.

After receiving evidence that Al III was directly violating the district court's orders by continuing to try to replace FTB as the trustee of the Grandchildren's Trusts (because FTB declined to disburse money as Al III requested), the district court issued a show cause order as to why Al III should not be held in contempt. ROA.20870, 20928, 21267; *see also* ROA.20875-20876, n.4 (summarizing prior warnings). Following a November 16, 2018 hearing, ROA.21268, the district court found there was "clear and convincing evidence" that Al III disobeyed court orders by attempting to replace the trustee of the Grandchildren's Trusts. ROA.21270. After detailing the repeated warnings given to Al III, the district court determined that sanctions were imperative to compel compliance with the court's orders. ROA.21270-21271.

Al III's prior misconduct included many attempts to "frustrate the Court's implementation of the Final Judgment and Settlement Agreement." ROA.21271. The district court noted Al III's "well-documented history of ignoring his contractual obligations under the Settlement Agreement and his obligations under the Final

Judgment." ROA.21271. "He has shown no hesitation in violating multiple provisions of the Settlement Agreement and Final Judgment." ROA.21271. Al III's violations included misconduct relating to the Grandchildren's Trusts, which are MHH Trusts, but they are not the MHTE or HHTE. ROA.21271-21272.[11]

After giving Al III many warnings to stop seeking to vacate, amend, or alter the Final Judgment, *see* ROA.21274-21276 (summarizing prior warnings), the district court imposed contempt penalties on Al III, requiring him to repay attorneys' fees he cost Al Jr. and his estate to incur, ROA.21277-21278, finding that Al III was engaging in "vexatious filings." ROA.21275.

For present purposes, the key point is that the district court continued to enforce the Final Judgment as written through the end of 2018. It did not retreat from its prior clear statements that the Final Judgment would be enforced according to its terms.

### F. The District Court Failed to Enforce the Final Judgment's Waiver of Standing Clause Against Caroline.

When Caroline initiated prohibited trust litigation over the LHMTA, Appellants moved to enjoin Caroline from pursuing her Lawsuit. ROA.25704, 25708; *see also* ROA.25774 (response) & ROA.25760 (reply). The district court denied Appellants' motion. ROA.25847. Surprisingly, the district court said it

---

[11] Al III also repeatedly challenged the impartiality of members of the federal judiciary in the Northern District of Texas. ROA.21272-21274.

would be "absurd" to enforce the Final Judgment as written. ROA.25866-25867. The district court's failure to enforce the Final Judgment according to its terms against Al III's daughter, Caroline, is contrary to the Settlement Agreement, Final Judgment, applicable Texas law, and the history of this case. Appellants timely appealed to this Court. ROA.25873.

## SUMMARY OF THE ARGUMENT

The clear text, purpose, and intent of the Waiver of Standing Clause was to end litigation among the Agreeing Parties over any MHH Trust in which he or she was not a current beneficiary and to prevent such future litigation. Caroline is an Agreeing Party who was represented by both her parents when the parties entered into the Settlement Agreement and by a court-appointed guardian ad litem when the district court entered the Final Judgment. It is undisputed that the LHMTA is an MHH Trust. Caroline never became a current beneficiary of that trust because it was terminated before Al Jr. died. But even if she had become a current beneficiary of the LHMTA (though she did not), the Waiver of Standing Clause unequivocally bars her from challenging any actions with respect to the trust before she became a current beneficiary.

Rather than enforcing the Waiver of Standing Clause as written, the district court reversibly erred by holding it lacked jurisdiction to enforce that clause. In the Final Judgment, however, the district court retained jurisdiction to enforce the

judgment, including the Waiver of Standing Clause. The district court has exercised continuing jurisdiction multiple times. This Court affirmed the district court's prior exercise of continuing jurisdiction. After the Final Judgment was affirmed on direct appeal, the district court could not revise the Final Judgment or retreat from its jurisdictional duty to enforce that judgment. Changing material terms of the parties' Settlement Agreement and Final Judgment now to decline jurisdiction to enforce their terms fundamentally alters the underlying agreement among the parties and deprives them of their benefit of the bargain. The district court cited no authority allowing it to change the Settlement Agreement and Final Judgment.

The district court further erred when it held the Anti-Injunction Act precluded it from enjoining Caroline's state court Lawsuit. The Final Judgment's prohibition against continuing litigation was entered long before Caroline filed her Lawsuit. Thus, the Anti-Injunction Act does not apply. But even if it did apply, the present circumstance falls squarely within the statutory exceptions for injunctions needed to effectuate the federal court judgment and to aid the federal court's exercise of its jurisdiction.

Because Caroline has clearly breached the Settlement Agreement and violated the Final Judgment's Waiver of Standing Clause, this Court should exercise its discretion to enforce the judgment and permanently enjoin Caroline from continuing to violate it. The best—in fact, only—way to bring closure, to restore the peace

granted by the Settlement Agreement and Final Judgment, and to avoid the next generation of Al III litigation is to swiftly enforce their terms. The Court should not allow the next generation of Al III's family to begin anew Al III's pastime of filing lawsuits in violation of the Settlement Agreement and Final Judgment.

## ARGUMENT

### A. STANDARD OF REVIEW.

This Court reviews the district court's jurisdictional decision *de novo*. *City of El Paso, Tex. v. El Paso Entm't, Inc.*, 382 F.App'x 361, 364 (5th Cir. 2010) ("No authority need be cited for this issue [of ancillary subject matter jurisdiction] being one of *de novo* review."). The district court's interpretation of prior court orders is also subject to *de novo* review unless there is ambiguity in the order. *In re AKD Inv.*, 79 F.4th 487, 491 (5th Cir. 2023). "[H]owever, the documents must truly be ambiguous, even in light of other documents in the record, before we will defer." *Id.* (quoting *In re Nat'l Gypsum Co.*, 219 F.3d 478, 484 (5th Cir. 2000)). The Final Judgment and Settlement Agreement are not ambiguous. Caroline has never argued to the contrary.

This Court has previously explained that a settlement agreement is construed as a matter of law in accordance with applicable "local law." *Hill I*, 495 Fed. Appx. at 486. It is a contract with bargained-for terms. Here, "the settlement agreement … specifically empowered the district court to resolve disputes in the agreement's

effectuation." *Id.* at n.2. The Court also construes the Final Judgment as a matter of law using contract interpretation principles. *Hill II*, 578 F.App'x at 459; *see City of El Paso v. El Paso Entm't, Inc.*. 464 F.App'x 366, 371-72 (5th Cir. 2012) (explaining interpretation of agreed judgments in relation to contract law principles).

The Settlement Agreement and Final Judgment's unambiguous terms must be enforced as written to give effect to the parties' intent. *Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 339 (Tex. 2023). Contractually-chosen language entered after months of negotiations should be viewed in light of the surrounding circumstances under which it was written. *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 757-58, 764 (Tex. 2018). "Understanding the context in which an agreement was made is essential in determining the parties' intent *as expressed in the agreement*, but it is the parties' expressed intent that the court must determine." *Anglo-Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011).

Here, the plain text, purpose, and intent expressed in both the Settlement Agreement and the Final Judgment, including the Waiver of Standing Clause, was to end all current and potential future litigation between the Agreeing Parties over the MHH Trusts when an Agreeing Party was not a current beneficiary of the trust at issue.

### B. THE DISTRICT COURT ERRED BY FAILING TO EXERCISE SUBJECT MATTER JURISDICTION TO ENFORCE THE FINAL JUDGMENT.

#### *1. The District Court Has Ancillary Jurisdiction to Enforce the Final Judgment.*

Ancillary enforcement jurisdiction enables a court "to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Peacock v. Thomas*, 516 U.S. 349 (1996) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379–380 (1994)). "Ancillary enforcement jurisdiction is, at its core, a creature of necessity." *Id.* at 359. The Court explains:

> We have reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments. Without jurisdiction to enforce a judgment entered by a federal court, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution."

*Id.* at 356 (citation omitted). "The court's enforcement authority extends to 'collateral issues,' things like fees, costs, contempt, and sanctions." *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 416 (5th Cir. 2018). Jurisdiction "continues until the judgment has been satisfied." *Butt v. United Bhd. of Carpenters & Joiners of Am.*, 999 F.3d 882, 887 (3d Cir. 2021) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 23 (1825)).

"[O]nce [the district court] had jurisdiction and had acted, it had the duty not to fall back when unanticipated issues … arose." *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 87 (3d Cir. 2011). Where the federal court has approved a stipulated

judgment, it has a duty to enforce it. *Geller v. Branic Intern. Realty Corp.*, 212 F.3d 734 (2d Cir. 2000); *see also United States v. Erie County*, 763 F.3d 235, 240 (2d Cir. 2014) (a district court may act *sua sponte* to enforce duties imposed by a stipulated judgment); *Sanchez v. Maher*, 560 F.2d 1105, 1108 (2d Cir. 1977) ("The district court has not only the power, but the duty to enforce the stipulation which it had approved.").

Federal courts are not dependent on state courts to enforce their judgments. *See IFC Interconsult, AG v. Safeguard Intern. Partners, LLC.*, 438 F.3d 298, 313 (3d Cir. 2006). "A federal court has ancillary jurisdiction to interpret a prior federal court order where the effect of such an interpretation would, *inter alia*, nullify or prevent future enforcement of the original federal judgment." *City of El Paso, Tex. v. El Paso Entm't, Inc.*, 382 F.App'x at 364. "[A] federal district court can exercise ancillary jurisdiction over a second action in order 'to secure or preserve the fruits and advantages of a judgment or decree rendered' by that court in a prior action." *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1292 (5th Cir. 1992).

Here, Appellants asked the district court to enforce its Final Judgment—to prevent the parties from being deprived of the benefit of their bargain that led to the Final Judgment—just like when Al III violated the Final Judgment's no contest clause. If Appellants were required to litigate Caroline's claims in state court, they would lose the benefit of the peace bargained for in the Final Judgment. But, the

district court refused, claiming it had, *sua sponte*, limited its own jurisdiction. The district court erred by failing to enforce the Final Judgment. For the district court to be correct, it would have had to change the terms of the May 2010 Settlement Agreement (a contract) and the November 2010 Final Judgment (in which Judge O'Connor approved and incorporated the contract), which it cannot do.

#### ***2. The District Court Erred by Purporting to Narrow Its Ancillary Enforcement Jurisdiction Years After this Court Affirmed the Final Judgment.***

Rather than enforcing the 2010 Final Judgment's plain language, the district court attempted to fundamentally change the judgment in 2018 and 2026—to narrow its jurisdiction to apply only to issues regarding the MHTE and HHTE, which were only two of the many MHH Trusts at issue in the underlying litigation. The district court began by explaining its "narrowing" of its continuing jurisdiction by quoting its July 2018 Order:

> With respect to any Hunt/Hill family trusts other than the MHTE and HHTE, therefore, this court does not have continuing jurisdiction, and issues pertaining to those family trusts are not properly before this court. The court declines to expand its continuing jurisdiction beyond the implementation and enforcement of the Settlement Agreement and Final Judgment.

ROA.25856-25857.[12] Then, in January 2026, the district court went further explaining it would not even enforce the Final Judgment's Waiver of Standing

---

[12] The July 2018 Order stated this conclusion in a single paragraph with no legal reasoning or textual analysis of the Final Judgment. ROA.21154-21155.

Clause against Agreeing Parties to the extent they were pursuing claims regarding MHH Trusts, other than the MHTE and HHTE. ROA.25856-25857, 25860. But the district court's continuing jurisdiction to enforce the Waiver of Standing Clause is not about exercising jurisdiction over the trusts *per se*. It is about "enforcement of the Settlement Agreement and Final Judgment" against Agreeing Parties, including Caroline, to end litigation over matters foreclosed by the Settlement Agreement and Final Judgment. The district court cannot change the Settlement Agreement and Final Judgment, nor could it ignore their terms.

The district court's narrow interpretation of its continuing jurisdiction is contrary to the Final Judgment's plain language, which applies the Waiver of Standing Clause to "Agreeing Parties" seeking relief regarding *any* MHH Trust. Doc.999, ¶28. The fact that the Waiver of Standing Clause uses the broader phrase "MHH Trust" rather than using narrower defined names for particular trusts is a clear indication of the intent to apply the clause broadly. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("the same term usually has the same meaning and different terms usually have different meanings"). Allowing parties bound by the Final Judgment to litigate issues regarding MHH Trusts (other than the MHTE and HHTE) fundamentally changes the language and defeats the parties' intent in the Settlement Agreement and Final Judgment, which were designed to prevent future litigation such as Caroline's Lawsuit.

After this Court affirmed the Final Judgment, it was not subject to being re-written or collaterally attacked. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009). Judge Lindsay cannot change the Final Judgment Judge O'Connor entered years earlier. *Id.* at 154 ("Almost a quarter-century after the 1986 Orders were entered, the time to prune them is over.").

*Travelers* is analogous. *Travelers* arose from the Johns-Manville Corporation ("***Manville***") bankruptcy, following countless asbestos-related lawsuits. *Id.* at 140. Manville's insurers, including Travelers, agreed to a settlement fund to pay claimants. *Id.* at 141. The insurers' participation was a "cornerstone" of Manville's reorganization. *Id.* "There would have been no such [resolution] without the injunction at the heart of the present dispute." *Id.* The injunction barred claimants from asserting claims against the insurers that enabled the Manville reorganization. *Id.* at 141-42. The bankruptcy court incorporated the injunction in its final Confirmation Order in 1986. It was affirmed on appeal. *Id.*

Years later, claimants filed "Direct Actions" against Travelers in various state courts. *Id.* Travelers asked the bankruptcy court to enjoin those lawsuits. *Id.* at 143. The bankruptcy court agreed and entered an order confirming the scope of its 1986 Confirmation Order, writing "the Direct Actions 'are—and always have been—permanently barred' by the 1986 Orders." *Id.* at 145. Although the Second Circuit recognized that the bankruptcy court had jurisdiction to interpret and enforce the

1986 Confirmation Order, the Second Circuit held it could not be enforced as written because it would exceed the scope of the bankruptcy court's jurisdiction. *Id.* at 146.

The Supreme Court reversed. Once the bankruptcy court's order was affirmed on direct appeal, it was not subject to collateral attack or revision, even if the original order exceeded the bankruptcy court's jurisdiction. *Id.* at 148, 152-53. Orders should be enforced as written. *Id.* at 149 (focusing on "what the orders say").[13] The Court continued:

> once the 1986 Orders became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the "'parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'"

*Id.* at 152 (citations omitted).

Here, the Final Judgment became *final* after this Court's 2012 direct review. *Hill I*, 495 F.App'x at 485. Its Waiver of Standing Clause is intentionally broad, barring actions about any MHH Trust by contingent beneficiaries. If anyone had an issue with the Waiver of Standing Clause's scope, the time to raise it was years ago on direct appeal. The district court's attempt to narrow the Final Judgment's scope years after-the-fact deprives Appellants and many others of the benefit of their

---

[13] The Manville injunction used "broad language" to provide the insurers with "global finality." *In re Johns-Manville Corp.,* 517 F.3d 52, 61 (2d Cir. 2008).

bargain—their negotiated peace in return for a nine-figure settlement with Al III (Caroline's father) and his immediate family.

### *3. Appellants Did Not Waive or Forfeit Their Right to Contest the District Court's Erroneous Interpretation of the Final Judgment.*

The district court further erred by finding Appellants waived or forfeited their rights to enforce the Final Judgment in federal court. ROA.25863. The district court explained: "forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." ROA.25863 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). But there is no conduct, action, or omission by Appellants that could support either waiver or forfeiture. As the district court correctly recognized, Appellants' position is (and has always been) that: "[t]his Court's prior orders did not (and could not) rewrite the Waiver of Standing Clause to narrow its application to only the MHTE or the HHTE." ROA.25862. Appellants' position is based on the Final Judgment's plain language. The district court's attempt to rewrite the Final Judgment to narrow its application to only the MHTE or HHTE violates the Final Judgment's plain language. The district court cannot rewrite the 2010 Final Judgment in 2018 or in 2026 to avoid its obligation to enforce its judgment.

**a. <u>The District Court's July 2018 Order Did Not Narrow the Scope of Jurisdiction to Enforce the Final Judgment's Waiver of Standing Clause.</u>**

Before the district court's January 30, 2026 Order, there was no indication the district court believed its July 2018 Order applied to limit enforcement of the Waiver of Standing Clause. To the contrary, the July 2018 Order that was entered without prejudice stated the district court had "continuing jurisdiction" over "enforcement of the Settlement Agreement and Final Judgment." ROA.21148. The July 2018 Order explained the Waiver of Standing Clause applied to bar the Agreeing Parties from asserting claims relating "to any trust for the primary benefit of a descendant of Margaret Hunt Hill of which he or she is not a current beneficiary." ROA.21147. Later, the July 2018 Order included language stating it did not have continuing jurisdiction "[w]ith respect to any Hunt/Hill family trusts other than the MHTE and HHTE" over "issues pertaining to those family trusts." ROA.21154. But the district court concluded that it "declines to expand its continuing jurisdiction beyond the implementation and enforcement of the Settlement Agreement and Final Judgment." ROA.21154-21155. Read as a whole, the July 2018 Order confirmed the district court's continuing jurisdiction to enforce the Final Judgment, including the Waiver of Standing Clause, as written.

Context is important to understand the "issues pertaining to those family trusts" that the district court declined jurisdiction to reach. ROA.21154. In July

2018, Al III requested injunctive relief to prevent dissolution of the LHMTA and to preserve its assets. ROA.21153-21154; Doc.1877. Al III's request was not tied to any specific clause in the Final Judgment. Accordingly, the district court determined it lacked jurisdiction to address those issues. Al III was not seeking to enforce the Waiver of Standing Clause or the Continuing Jurisdiction Clause; accordingly, the district court's July 2018 Order did not impact the scope of continuing jurisdiction to address those clauses.

The district court's January 2026 Order confirms the distinction drawn in the July 2018 Order. *See* ROA.25855-25856 (describing the relief requested in 2018). The district court erroneously conflated the relief Appellants requested against Caroline with the relief Al III previously requested against Al Jr. and the LHMTA co-trustees:

> Movants' requested relief with respect to Caroline Hill's actions is akin to Hill III's requested relief with respect to Hill Jr.'s and his co-trustees' dissolution of the Lyda Hunt–Margaret Trust. Both seek to invoke the court's continuing jurisdiction to enjoin actors in state court raising issues arising under Hunt/Hill family trusts other than the MHTE and HHTE.

ROA.25868. By conflating these different requests, the district court ignored the fact that Appellants are seeking to enforce the Waiver of Standing Clause's express language, whereas Al III was not seeking to enforce any express language from the Settlement Agreement or the Final Judgment.

The district court concluded its discussion by writing: "the court sees no pathway to expand its jurisdiction and hold that the actions taken by Caroline Hill in the State Probate Case fall within the ambit of the MHTE and HHTE and, concomitantly, the reach of the court's continuing jurisdiction." ROA.25868. But the relief here does not require the district court to expand its jurisdiction; it simply requires it to enforce the parties' Settlement Agreement and Final Judgment's plain language, something the district court recognized it had continuing jurisdiction to do in July 2018. ROA.21147-21148, 21154-21155.

Previously, the district court emphatically stated it would enforce the Final Judgment as written and warned everyone against trying to alter or narrow its scope. *See* ROA.18524, 18530. Ironically, it is the district court that is now trying to change the Final Judgment. Appellants did not request relief "beyond … enforcement of the Settlement Agreement and Final Judgment." ROA.21154-21155. Rather, they asked the district court to enforce its judgment. Any suggestion that the Final Judgment is limited to only the MHTE and HHTE is contrary to the Final Judgment's plain language which addressed many MHH Trusts other than the MHTE and HHTE. Such a suggestion is also contrary to the district court's prior correct exercise of continuing jurisdiction to address Al III's inappropriate conduct with respect to the Grandchildren's Trusts. *See* Fact Sections C & D above.

### b. <u>Appellants Could Not Appeal the July 2018 Order Until Now.</u>

Appellants did not intentionally relinquish or abandon a known right by not appealing the July 2018 Order.[14] *Olano*, 507 U.S. at 733 (defining waiver). Appellants could not have obtained relief from the July 2018 Order before now because it was an interlocutory order that was not appealable. Accordingly, the district court erred when it concluded that Appellants waived or forfeited their rights by not appealing the July 2018 Order in 2018.

The district court emphasized that "*no party or participant/intervenor in this matter challenged the court's limited retention of jurisdiction or appealed the decision*." ROA.25857. But the district court also admitted the July 2018 Order was "denied … without prejudice" because "any relief would be 'premature' because of the pending severed probate proceedings." ROA.25856. The district court characterized its discussion of jurisdiction in the July 2018 Order as a "statement concerning the scope of its continuing jurisdiction," concluding that "it did not need to rule, definitively, on the application, *vel. non.*, of the Waiver of Standing Clause to separate trusts …" ROA.25862 (emphasis in the original).

Absent an actual decision on the merits, Appellants could not have appealed the July 2018 Order. *See Cooper Indus., Ltd. v. Nat'l Union Fire Ins.*, 876 F.3d 119,

---

14 The authorities the district court cited at ROA.25864-25865 are all distinguishable because Appellants squarely addressed the basis for district court jurisdiction.

126 (5th Cir. 2017) ("only an 'aggrieved' party may appeal a judgment")*; see also Conwill v. Greenberg Traurig, L.L.P.*, 448 F.App'x 434, 438 (5th Cir. 2011) (appellate courts "review judgments, not statements in opinions" and do not review "non-binding interlocutory opinions"). The district court's deferral to a future day was not an appealable order. *City of Fort Lauderdale v. Freeman*, 197 F.2d 122, 124 (5th Cir. 1952). Indeed, the district court's deferral of issues as premature was "without prejudice," which means "without loss of any rights; in a way that does not harm or cancel the legal rights or privileges of a party." BLACK'S LAW DICTIONARY, *without prejudice* (12th ed. 2024); *see also Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1298 (11th Cir. 2021) (equating "without prejudice" with "meaning that its ruling was not definitive").

Al III's December 2018 appeal did not bring the July 2018 Order to this Court for review. Al III appealed under 28 U.S.C. §1292(a)(1), which allows for appeals from "orders." Al III's notice of appeal confirmed he appealed the district court's orders from December 2018, not the July 2018 Order. ROA.21310. Al III's appeal did not bring the entire case up for review. *See Ali v. Quarterman*, 607 F.3d 1046, 1048 (5th Cir. 2010). The district court's July 2018 commentary about the scope of jurisdiction over trust-related issues was not part of the will contest injunction order that Al III appealed. *See* ROA.21228, 21293. Moreover, the scope of jurisdiction over trust-related issues was not relevant to or intertwined with the scope of

jurisdiction to enjoin Al III's improper will contest. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 579 (5th Cir. 2015) (addressing the inextricably intertwined standard). As a result, the prior appeals in this case did not present Appellants with an opportunity to address the scope of jurisdiction over MHH Trusts other than the MHTE and HHTE. To be sure, the LHMTA was not at issue in the prior appeals.

Accordingly, Appellants did not forfeit any rights under the Final Judgment. Instead, they invoked the district court's jurisdiction in 2018 and 2025-2026 when enforcement of the Final Judgment was needed. When the district court entered an appealable order denying enforcement, Appellants timely appealed. ROA.25847, 25873.

The Settlement Agreement and Final Judgment were supposed to bring peace to this family. But Al III, and now his daughter, continue to stir-up disputes. The district court erred by attempting to divest itself of its obligation to enforce its Final Judgment by claiming it somehow changed the 2010 Final Judgment to limit its jurisdiction years later. The district court's failure to enforce the Final Judgment as written wastes judicial resources in other courts far exceeding whatever burden may be associated with the district court enforcing its own Final Judgment. The way to stop Hunt/Hill family litigation, and prevent future litigation, is to enforce the Final Judgment—not by failing to enforce it, trying to change it, or ignoring its material terms, which will only invite more litigation like Caroline's Lawsuit.

#### 4. *Enforcing the Final Judgment to Prevent Caroline from Challenging the LHMTA Does Not Lead to Absurd Results.*

Rather than enforcing the Final Judgment, the district court said its plain language leads to "absurd" results. ROA.25865-25866. The district court hypothesized Hunt/Hill family trust disputes could continue "for successive generations"; if so, the Waiver of Standing Clause could apply. ROA.25865-25866. But this ignores the Final Judgment's plain language, under which the Waiver of Standing Clause applies only to "Agreeing Parties," which are defined in Paragraph 2. Doc.999, ¶2. The term does not include successive or remote generations as the district court hypothesized.

While the district court speculated about the future, this appeal addresses issues at the Final Judgment's core—an MHH Trust existing when the 2010 Final Judgment was entered, as well as a dispute initiated by Al III's daughter against Al Jr.'s estate. This is precisely the type of dispute that the Final Judgment was intended to prevent. After all, the Final Judgment used the broader term "MHH Trusts" in the Waiver of Standing Clause, rather than the narrower specific terms MHTE and HHTE that are used repeatedly elsewhere.

The district court erred by trying to rewrite the plain language of the 2010 Final Judgment. *See Finley Res., Inc.*, 672 S.W.3d at 339; *see also Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630-31 (Tex. 2013) (explaining absurdity is a very high standard). Changing the 2010 Final Judgment not only is prohibited by

law, but also disrupts the peace and benefit of the bargain provided in the Settlement Agreement and Final Judgment. Moreover, as in *Travelers*, a subsequent appeal is not appropriate to collaterally attack the 2010 Final Judgment's scope, even if the district court found it to be absurd in hindsight.

### C. THE ANTI-INJUNCTION ACT DOES NOT PRECLUDE ENFORCING THE FINAL JUDGMENT.

The district court also erroneously concluded that the Anti-Injunction Act barred it from enjoining Caroline's Lawsuit in state probate court. ROA.25869-25871. The Anti-Injunction Act provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. §2283. The Anti-Injunction Act does not even apply here because it does not "preclude injunctions against the institution of state court proceedings." *Hill V*, 953 F.3d at 308 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 485 n.2 (1965)). But if it applied, Appellants' request for injunctive relief against Caroline falls under the second and third exceptions for actions "to protect or effectuate [federal court] judgments" and "where necessary in aid of its jurisdiction." 28 U.S.C. §2283.

#### *1. The Anti-Injunction Act Does Not Apply to the Waiver of Standing Clause.*

The Waiver of Standing Clause unequivocally ordered that Caroline (as an Agreeing Party) waives "all rights … she may have as a future or contingent

beneficiary of [any MHH Trust] … including but not limited to *the right to demand information, seek an accounting, or assert any claim or cause of action* in connection with any such trust." Doc.999, ¶28 (emphasis added). The Final Judgment further incorporated the terms of the Settlement Agreement, under which all parties (including Caroline) agreed that "specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for any breach of any term, condition, covenant, or warranty of this Agreement." Doc.879, ¶5(r). Thus, under the plain language of the Settlement Agreement and Final Judgment, Caroline was ordered not to initiate state court litigation such as the Lawsuit. Enforcing the Settlement Agreement and Final Judgment to prevent a party from initiating state court litigation does not violate or implicate the Anti-Injunction Act. *Hill V*, 953 F.3d at 308.

### *2. Action From the District Court Is Necessary to Protect or Effectuate the Federal Court Judgment.*

Even if the Anti-Injunction Act applies, Appellants' motion to enforce falls under the statutory exception allowing injunctive relief "to protect or effectuate [federal court] judgments." 28 U.S.C. §2283. The Final Judgment's Waiver of Standing Clause was an affirmative order prohibiting Caroline from initiating litigation over any MHH Trust before she became a current beneficiary. This was a material term of the Settlement Agreement and a key benefit all Agreeing Parties (including Appellants and Appellee) received in return for agreeing to the Settlement

Agreement's other terms under which Al III's family received a nine-figure settlement, including trusts formed for Caroline's benefit. Injunctive relief is necessary to protect Appellants' benefit of the bargain under the Settlement Agreement and Final Judgment.

The exception "to protect or effectuate [federal court] judgments" "allows federal courts to stay state-court proceedings in order to prevent a party from relitigating in state court issues that 'have been decided by the federal court.'" *Hill V*, 953 F.3d at 307-08 (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147–48 (1988)). This Court previously held that the Anti-Injunction Act did not bar the district court from enjoining Al III from pursuing state court litigation in violation of the Final Judgment, explaining:

> we agree with the district court that the injunction falls squarely under the relitigation exception. The injunction is "necessary to protect" and "effectuate" the final judgment, 28 U.S.C. § 2283, which prohibits Hill III from contesting the will in state (as well as federal) court.

*Hill V*, 953 F.3d at 308. This Court agreed that the "no contest" clause in the federal court's Final Judgment resolved the issue of whether Al III could contest Al Jr.'s will. *Id.* Thus, the issue of whether Al III had standing to challenge Al Jr.'s will (or whether he waived any right to challenge it) was actually litigated in federal court for purposes of the Anti-Injunction Act. *Id.* The same result follows here for purposes of analyzing whether the Final Judgment's Waiver of Standing Clause

allows the federal court to enjoin Caroline from pursuing the Lawsuit regarding the LHMTA in probate court.

This Court applies a four-part test to determine whether this Anti-Injunction Act exception applies:

> First, the parties in a later action must be identical to (or at least in privity with) the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits.

*New York Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000). There is no legitimate dispute that each element is satisfied here. The district court is a court of competent jurisdiction that entered the Final Judgment between the Agreeing Parties in 2010. Caroline was represented by both her parents and a court-appointed guardian ad litem. And, the claims she is attempting to pursue in the Lawsuit are the same as the claims barred by the Final Judgment's Waiver of Standing Clause.

Although the district court cited the correct four-part test, ROA.25871, it misapplied the final three elements. Rather than focusing on the prior *federal* judgment Appellants attempted to enforce (*i.e.,* the district court's own judgment), the district court erroneously focused on whether the state court had entered its own final judgment. ROA.25781. The district court's analysis was backwards and not focused on protecting its own prior federal court judgment precluding further litigation over MHH Trusts by contingent beneficiaries. The district court's analysis

conflicts with *Hill V*, where this Court found injunctive relief appropriate to prevent Al III's family from using state courts to undermine the Final Judgment. *See* 953 F.3d at 308.

Moreover, to the extent that Caroline tries to avoid this exception to the Anti-Injunction Act by arguing that the LHMTA was not previously litigated in the federal court, this Court's decision in *Hill V* is still dispositive. *See Hill VI*, 953 F.3d at 308. Such an argument is a "red herring." *Id.* This precise issue is controlled by the Final Judgment, which was written to end disputes among the Agreeing Parties over all MHH Trusts. *Id.*; *see also In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1335 (5th Cir. 1981) ("Unless the judgment is set aside on appeal, state proceedings seeking to relitigate issues covered by the federal judgment may be enjoined under the 'protection' exception." (citing *Woods Exploration & Producing Co. v. Aluminum Co. of Am.*, 438F.2d 1286, 1311-1316 (5th Cir. 1971)). Just as the district court had the authority to enjoin Al III from contesting Al Jr.'s will, the district court also has the jurisdiction to enjoin Caroline from re-initiating litigation over MHH Trusts, which is clearly precluded by the Final Judgment's Waiver of Standing Clause.

#### ***3. Action Is Also Appropriate in Aid of Federal Court Jurisdiction.***

This dispute also falls under the Anti-Injunction Act "in aid of jurisdiction" exception. 28 U.S.C. §2283. Many courts recognize that when a federal district

court approves a settlement and expressly retains jurisdiction over its enforcement and interpretation, that court's jurisdiction includes the authority to enjoin state proceedings that would interfere with the settlement agreement. *See Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998); *Battle v. Liberty Nat'l. Life Ins. Co.*, 877 F.2d 877, 880-81 (11th Cir. 1989); *United States v. Am. Soc'y of Composers*, 442 F.2d 601, 603 (2d Cir. 1971). "[I]t would make no sense for the district court to retain jurisdiction to interpret and apply its own judgment to the future conduct contemplated by the judgment, yet have a state court construing what the federal court meant in its judgment." *Flanagan*, 143 F.3d at 545.

Although the district court held this exception did not apply in the current dispute with Caroline, the district court previously (and correctly) explained this exception applies in disputes like this one when necessary to enjoin state court litigation interfering with a completed settlement. ROA.21241-2123. Previously, the district court agreed that the in aid of jurisdiction exception applied to allow the district court to enjoin Al III from contesting Al Jr.'s will. Although this Court did not reach that issue in the prior appeal, *see Hill V*, 953 F.3d at 308, there is no reason why this Court should depart from its sister circuits recognizing that a federal court must have the authority to enforce its settlements where, as here, it has retained jurisdiction over them. Further, Judge O'Connor approved and incorporated the Settlement Agreement into the Final Judgment; therefore, enforcing the Settlement

Agreement is also enforcing the Final Judgment, and preventing interference with both.

The district court's only explanation for changing its ultimate conclusion for Caroline (as compared to her father) was that "the court has already explicitly narrowed its continuing jurisdiction in this case to disputes involving the MHTE and HHTE." ROA.25870-25871. As explained above, the district court erred by attempting to change the Final Judgment to narrow its enforcement jurisdiction. That error also requires reversal of the district court's flawed Anti-Injunction Act analysis.

### D. THIS COURT SHOULD ENFORCE THE WAIVER OF STANDING CLAUSE, OR, ALTERNATIVELY, EXPEDITE PROCEEDINGS ON REMAND.

Although this Court's usual practice is not to reach issues for the first time on appeal, the Court has discretion to grant relief when pure issues of law are presented and there is no doubt as to the conclusion. *See Glass v. Paxton*, 900 F.3d 233, 242-43 (5th Cir. 2018)*; Singleton v. Wulff*, 428 U.S. 106, 121 (1976). Here, the parties' position on the Final Judgment's Waiver of Standing Clause are fully briefed. The facts are undisputed. The Waiver of Standing Clause is clear and unambiguous. It prevents Caroline from pursuing her claims about the LHMTA because she was never a current beneficiary of that trust. Accordingly, Caroline is clearly violating the Waiver of Standing Clause by pursuing her claims in the Lawsuit. Given the extended efforts by her father, and now Caroline, to try to avoid their obligations in

the Final Judgment, despite having received over $130 million in consideration, there is no just reason for further delay. At a minimum, this Court should grant Appellants temporary relief by staying Caroline's Lawsuit in its entirety until this dispute is fully and finally resolved.

This Court also has authority to expedite proceedings. *See* 5th Cir. L. R. 27.5; *Daniels Health Sciences, L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013) (directing district court to expedite proceedings on request for a permanent injunction); *Stass v. Am. Commercial Lines, Inc.*, 683 F.2d 120, 122 n.1 (5th Cir. 1982) (expediting case on remand because of delays due to appeal). Where, as here, Appellants have requested temporary or preliminary injunctive relief, the relief must be granted promptly to be effective. *See In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 533 (5th Cir. 2024). Appellants have already filed their motion to expedite this appeal, which is still pending before the Court. Appellants further request that, if this Court orders remand, that the Court also instruct the district court to expedite resolving Appellants' request for injunctive relief preventing Caroline from proceeding with the Lawsuit. Appellants are being deprived of the benefit of the bargain under the Final Judgment each day the Lawsuit is pending. Indeed, Caroline is pursuing discovery into issues the Final Judgment expressly precludes her from obtaining. These circumstances present good cause regarding why this proceeding should be expedited until it is fully and finally

resolved. *See General Land Office v. Biden*, 71 F.4th 264, 275 (5th Cir. 2023) (urging the district court to act expeditiously when the Court declined to reach an issue for the first time on appeal).

## CONCLUSION

The district court's decision should be reversed. Appellants request that the Court enforce the Waiver of Standing Clause and enjoin Caroline from proceeding with her Lawsuit in probate court. Alternatively, this Court should remand this dispute to the district court for further proceedings with instructions to address Appellants' motion to enforce the Final Judgment on an expedited basis.

Respectfully submitted,

*/s/ W. Scott Hastings*

W. Scott Hastings
scott.hastings@troutman.com
TROUTMAN PEPPER LOCKE LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
(214)740-8000

G. Michael Gruber
mike.gruber@gtlaw.com
Brian E. Mason
Brian.mason@gtlaw.com
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
(214) 665-3600

**COUNSEL FOR APPELLEE MARGARET KELIHER, INDEPENDENT EXECUTOR OF THE ESTATE OF ALBERT G. HILL, JR.**

*/s/ Michael J. Lang*

Michael J. Lang
mlang@cwl.law
Alexandra Ohlinger
aohlinger@cwl.law
CRAWFORD WISHNEW & LANG PLLC
1700 Pacific Ave. Suite 2390
Dallas, Texas 75201
(214) 817-4500

**COUNSEL FOR CAROL E. IRWIN (AS INDEPENDENT EXECUTOR OF THE ESTATE OF IVAN IRWIN, JR., DECEASED, AND FORMER CO-TRUSTEE OF THE LYDA HILL—MARGARET TRUST F/B/O ALBERT G. HILL, JR.)**

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April, 2026, I filed this Appellants' Brief through the Fifth Circuit's CM/ECF filing system on all counsel of record.

*/s/ W. Scott Hastings*
W. Scott Hastings

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this Appellants' Brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(B)(i) & 32(a)(7)(B) because this brief contains 12,497 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

*/s/ W. Scott Hastings*
W. Scott Hastings

April 27, 2026